David L. WHITE, Plaintiff–Appellant,

v.

YORK INTERNATIONAL
CORPORATION, Defendant–Appellee.

No. 93–6398.

United States Court of Appeals,
Tenth Circuit.

Jan. 5, 1995.

Submitted on the briefs: *

Calvin W. Hendrickson, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, OK, and Mark D. Nation, Midwest City, OK, for appellant.

Jim T. Priest and Debra B. Cannon, McKinney, Stringer & Webster, P.C., Oklahoma City, OK, for appellee.

Before MOORE, McWILLIAMS, and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

David White, the plaintiff below, appeals from the district court's grant of summary judgment to the defendant, York International Corporation ("York") —— F.Supp. ——. White's suit alleges that he was illegally terminated by York because of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

In 1983, White was hired by York, a manufacturer of commercial air conditioners, for

---

* The parties have waived oral argument and agreed that the case may be submitted for decision on the briefs. See Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2. Further, after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This cause is therefore ordered submitted without oral argument.

the position of Unit Assembler. This position required lifting and continuous standing. In July of 1984, White broke his right ankle in a non-work-related accident. Following a four-month leave of absence, White returned to his same position at York. By letter of November 1, 1984, White's doctor, Dr. John B. Gruel, indicated that White should avoid standing for longer than two hours, limit his walking, and avoid jumping from heights. All of these restrictions, except for the restriction on jumping, eventually were lifted.

In 1990, White applied for, and received, a transfer to another position, Machine Operator II. Like the Unit Assembler position, the Machine Operator II position required lifting and continuous standing. White Dep., Appellant's App. at 48–51.

On August 13, 1991, White sustained another non-work-related injury to his ankle and took medical disability leave from York. Shortly thereafter, he was advised by Dr. Gruel to undergo arthrodesis, a surgical procedure by which the patient's ankle is immobilized, or fused. White had the procedure performed on March 27, 1992.

On August 3, 1992, White presented York a medical release from Dr. Gruel which contained the following restrictions: work as tolerated; no standing for longer than four hours; and no lifting more than fifteen pounds.

Finding the "work as tolerated" restriction ambiguous, York opted to exercise its rights under the Employee Guide to request an independent medical exam. Deposition of Thomas Hanson, York's Employee and Community Relations Manager, Appellant's App. at 75–76. Dr. Tom Ewing examined White and determined that he was unable to return to work at that time because, in Dr. Ewing's opinion, the ankle fusion was not complete.[1]

By letter dated November 18, 1992, York terminated White. It cited as the reason for his termination the fact that he had been absent from work for a twelve-month period.[2] The letter went on to state that, in light of his medical restrictions, the company was unaware of any accommodations it could reasonably make which would allow White to perform his job. *See* Appellant's App. at 80.

White filed suit against York, claiming that he was discharged because of his disability, in violation of the ADA and Oklahoma state law. York moved for summary judgment, arguing that White's injury was not a "disability," as that term is defined in the ADA. Alternatively, York claimed that (1) even if White were disabled, he could not perform the "essential functions" of his job; (2) York could not "reasonably accommodate" his disability; and (3) in any event, he was terminated under a nondiscriminatory absentee policy.

In response, White argued that York's stated reason for terminating him, the absenteeism policy, was a mere pretext, and that the real reason he was terminated was because he was disabled.[3] He further claimed that he could perform the essential functions of the job if he were afforded "reasonable accommodation." White Aff., Appellant's App. at 123.

The district court granted York's motion for summary judgment. In its order, the court noted that a factual dispute existed as to whether or not White was disabled. The court found, however, that even if he were disabled, White had failed to adduce any evidence supporting his contention that with reasonable accommodation he could perform the essential functions of his job. Thus, the court concluded, because White had failed to adduce evidence in support of an essential

1. White contends that Dr. Ewing's report should be discounted because it was premised on faulty information. The accuracy of Dr. Ewing's report presents a factual dispute which we need not address. Our analysis proceeds upon the undisputed fact that on September 18, 1992, the date that White was terminated, he at least was subject to the medical restrictions imposed by Dr. Gruel.

2. York's extended disability leave policy provided that an employee could take leave for up to twelve months, but that "[i]n no event shall the employment relationship continue beyond twelve (12) consecutive months of absence from work due to disability." Appellant's App. at 72–73.

3. York's termination letter to White clearly stated that his disability factored in to the decision to terminate him. Appellant's App. at 80. Thus, his "pretext" argument is without merit.

element of his claim, i.e., that he was a "qualified individual with a disability," 42 U.S.C. § 12111(8), summary judgment in favor of York was proper.[4]

 We review the district court's grant of summary judgment de novo to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Concrete Works of Colo., Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *id.* at 330 n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Concrete Works of Colo., Inc.*, 36 F.3d at 1518.

 The very purpose of a summary judgment action is to determine whether trial is necessary. Thus, the nonmoving party must, at a minimum, direct the court to *facts* which establish a genuine issue for trial. In the face of a properly supported motion for summary judgment, the nonmoving party may not rely upon unsupported allegations without " 'any significant probative evidence tending to support the complaint.' " *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510

(quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

## DISCUSSION

 The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *see School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130 n. 17, 94 L.Ed.2d 307 (1987); *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).[5]

 Accordingly, to qualify for relief under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him be-

---

4. Summary judgment also was granted against White on his claim under Okla.Stat. tit. 25, §§ 1302, 1901 (1987 & Supp.1995). White has not raised that issue in this appeal.

5. The language adopted in the ADA tracks that of the Rehabilitation Act of 1973, which provides that

[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Because the ADA expressly requires its provisions to be interpreted in a way that "prevents imposition of inconsistent or conflicting standards for the same requirements" under the two statutes, 42 U.S.C. § 12117(b), we rely on case law interpreting the Rehabilitation Act's "otherwise qualified" requirement in determining whether White was "qualified" under the ADA. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994); *Chandler v. City of Dallas*, 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *see also* 29 C.F.R. pt. 1630, App. § 1630.2(g); H.R.Rep. No. 485, 101st Cong., 2d Sess. 23 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 304 ("The ADA incorporates many of the standards of discrimination set out in regulations implementing section 504 of the Rehabilitation Act of 1973, including the obligation to provide reasonable accommodations unless it would result in an undue hardship on the operation of the business.").

cause of his disability.[6] *See Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir.1994); *Tyndall v. National Educ. Ctrs.,* 31 F.3d 209, 212 (4th Cir.1994); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994); *Gilbert v. Frank,* 949 F.2d 637, 640–42 (2d Cir. 1991); *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990).

■ Once the plaintiff produces evidence sufficient to make a facial showing that accommodation is possible, the burden of production shifts to the employer to present evidence of its inability to accommodate. *See Mason,* 32 F.3d at 318; *Barth,* 2 F.3d at 1187; *Gilbert,* 949 F.2d at 642. If the employer presents such evidence, the plaintiff may not simply rest on his pleadings. He "has the burden of coming forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. Unit A 1981); *see Mason,* 32 F.3d at 318; *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir.1991). As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of per-

suading the trier of fact that he has been the victim of illegal discrimination based on his disability. *See St. Mary's Honor Ctr. v. Hicks,* — U.S. ——, —— – ——, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993); *Tyndall,* 31 F.3d at 213; *Barth,* 2 F.3d at 1186; *Pushkin,* 658 F.2d at 1385; *see also Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994).

In this case, the district court found that White had demonstrated a genuine issue of fact as to whether he is or is not disabled. Thus, for purposes of our summary judgment review, we assume that White established the first element of his claim, and turn to the question of whether he is qualified under the ADA.

■ In *Chandler v. City of Dallas,* 2 F.3d 1385 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994), the Fifth Circuit articulated a two-part analysis for determining whether a person is qualified within the meaning of the ADA:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reason-

---

**6.** Relying on language from *Pushkin v. Regents of Univ. of Colo.,* 658 F.2d 1372 (10th Cir.1981), White contends that in order to establish a *prima facie* case, he need only demonstrate that he is qualified *apart from* his disability. White has misread *Pushkin.*

In *Pushkin,* a case decided under the Rehabilitation Act, the plaintiff claimed that the University's stated reason for denying him admission to its psychiatry program was a pretext for unlawful discrimination based on his disability. We developed an analysis in *Pushkin,* much like the *McDonnell Douglas* test applicable in Title VII discrimination cases, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), in order to "sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). Under our *Pushkin* analysis, a plaintiff establishes his *prima facie* case by showing that he is "an otherwise qualified handicapped person *apart from* his handicap," and that he has been rejected under circumstances

which give rise to an inference that his rejection was based solely on his disability. *Pushkin,* 658 F.2d at 1387.

Obviously, the *Pushkin* analysis will not find application in all cases. Where, as here, an employer readily acknowledges that the decision to terminate the employee was premised, at least in part, on the employee's disability, the ultimate purpose of the *Pushkin* analysis will have been achieved from the outset. In such cases, the objective claims presented may be tested through the application of traditional burdens of proof as set forth above. *See Barth v. Gelb,* 2 F.3d 1180, 1185–87 (D.C.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994).

In any event, under White's reading of *Pushkin,* a blind person possessing all the qualifications for driving except sight, and accordingly denied the position of driving a school bus, could establish a *prima facie* case of discrimination. We reject such an absurd reading of the ADA. *See Southeastern Community College v. Davis,* 442 U.S. 397, 407 n. 7, 99 S.Ct. 2361, 2367 n. 7, 60 L.Ed.2d 980 (1979); *Daubert v. United States Postal Serv.,* 733 F.2d 1367, 1371 (10th Cir. 1984).

able accommodation by the employer would enable him to perform those functions.

*Id.* 2 F.3d at 1393–94; *see also Arline,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1130 n. 17; *Gilbert,* 949 F.2d at 641; *Chiari,* 920 F.2d at 315.

■■■ Our first task in applying this analysis is to define the "essential functions" of the jobs at issue in this case. Prior to taking disability leave, White was employed as a Machine Operator II. Previously, he had been employed as a Unit Assembler. York has submitted evidence in support of its claim that the ability to lift objects weighing more than fifteen pounds and to stand for longer than four hours are essential to the performance of these jobs. *See* Appellant's App. at 70, 81–83; Affidavit of Thomas Hanson, Appellant's App. at 38–39 ("Hanson Aff."). White has not disputed this contention. White Dep., Appellant's App. at 48–51. Moreover, because these positions exist for the express purpose of moving large pieces of sheet metal, it is obvious that the lifting and standing requirements bear more than a marginal relationship to the jobs. Furthermore, White has not contested York's assertion that these requirements could not be eliminated without fundamentally altering the nature of the jobs, something the ADA does not require an employer to do.[7] We therefore accept the lifting and standing requirements as essential functions of the jobs at issue.

White has admitted that he would have been unable to perform the essential functions of either position without accommodation. White Dep., Appellant's App. at 61; *see* Deposition of Dr. Jack Spencer, Appellant's App. at 120–22. Thus, we must consider whether White has demonstrated a genuine issue of fact regarding his ability to perform the essential functions with reasonable accommodation.

As to possible accommodations which would have enabled him to perform the essential lifting and standing functions of the Machine Operator II and Unit Assembler positions, White offered no evidence. Instead, he simply continued to assert the bald conclusion that with "reasonable accommodation" he could have performed the "essential functions" of the jobs at issue.[8]

With respect to the possible accommodation of reassignment to another position, again, White offered nothing beyond his own subjective opinion that he could perform various other jobs at York.[9] York, on the other hand, offered affirmative evidence that, as to each of the positions White identified, the essential functions required lifting greater than fifteen pounds and/or standing for longer than four hours; the position was at a grade higher than White's (labor grade 6); there was no identified job category; or there were no vacancies at the time of White's termination. Hanson Aff., Appellant's App. at 38.

EEOC guidelines provide that reassignment may be considered as a reasonable accommodation. 29 C.F.R. § 1630.2(*o*)(2)(ii). However, the ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker. 29 C.F.R. pt. 1630, App. § 1630.2(*o* ); *see Chiari,* 920 F.2d at 319.

7. *See* 29 C.F.R. pt. 1630, App. § 1630.2(*o*); *see also Southeastern Community College v. Davis,* 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); *Chiari,* 920 F.2d at 318.

8. *Compare* the present case *and Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1126–27 (11th Cir. 1993) (fire fighters suggested accommodations, but failed to demonstrate how the accommodations would enable them to perform essential functions) *and Chandler,* 2 F.3d at 1395 (summary judgment proper where diabetic plaintiffs put forth no evidence regarding possible accommodation of their disabilities) *with Wood v. Omaha Sch. Dist.,* 985 F.2d 437, 438–39 (8th Cir. 1993) (holding plaintiff school van drivers with type II diabetes raised genuine issue of material fact by offering evidence, by way of affidavit, regarding how they could readily monitor their blood sugar levels and maintain them at proper levels so as to avoid the risk of hypoglycemic reaction while driving).

9. White stated in his deposition that he believed he could have worked as a brazier, a production clerk, a forklift operator, or in York's electrical department. White Dep., Appellant's App. at 58–60.

White's response to York's affirmative evidence was simply to state that York's position was "untenable" and "irrelevant," and that with "reasonable accommodation," he could perform the jobs. Pl's.Resp., Appellant's App. at 99. Citing EEOC guidelines, White maintains that York's failure to initiate an informal interactive process with him in order "to identify reasonable accommodations and the requirements of the various jobs that he could perform with accommodations," operates as a per se preclusion to summary judgment. *Id.;* Appellant's Br. at 11; *see* 29 C.F.R. pt. 1630, App. § 1630.9.

White has misconstrued an EEOC *recommendation* as a statutory *requirement.* It is important to note that the interactive process is triggered only if the employee is "qualified," and, as discussed above, the term "qualified" is defined to include the concept of reasonable accommodation. Thus, the employer necessarily must make a threshold determination that the disabled employee may be accommodated, and is, therefore, qualified within the meaning of the ADA. It is at that point, the regulations recommend, that the employer and employee work together in order to identify how best to accommodate the employee.

## CONCLUSION

While we must resolve doubts in favor of White, conclusory allegations standing alone will not defeat a properly supported motion for summary judgment. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994). White has produced no evidence that accommodation was possible. Thus, he has failed to establish an essential element of his case: that he is a "qualified person with a disability," entitled to the protections of the ADA. On that basis, the district court properly granted summary judgment in favor of York. *See Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56; *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152, 1156 (10th Cir.1994). Because White has failed to establish the second element of his claim, that he was "qualified" under the ADA, it follows that we need not address the remaining element of his claim, whether York terminated him solely because of his disability.

The order of the district court is **AFFIRMED.**