**Eva O. DYER, Plaintiff,**

v.

**JEFFERSON COUNTY SCHOOL DISTRICT R–1, Defendant.**

**Civ.A. No. 94–S–194.**

United States District Court, D. Colorado.

Nov. 15, 1995.

---

**3.** As noted earlier, the FDIC was first served on July 18, 1995, and it filed its notice of removal on August 17, 1995.

Ronald E. Gregson, Denver, Co, for plaintiff.

Allen P. Taggart, Boulder, CO, for defendant.

ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on Defendant Jefferson County School District's Motion for Summary Judgment, filed December 21, 1994. The Court has reviewed the motion, response, reply, the applicable law and is fully advised in the premises.

Defendant moves for summary judgment on all of Plaintiff's claims. Plaintiff's first three claims are based on the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101 *et seq.* Plaintiff's fourth claim is based on the Colorado Workers' Compensation Act, C.R.S. § 8–40–101 *et seq.* Plaintiff's fifth claim is based on 42 U.S.C. § 2000e–3 of the Civil Rights Act of 1964.

**SUMMARY JUDGMENT**

Granting summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Redmon v. United States,* 934 F.2d 1151, 1155 (10th Cir.1991); *Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir.1991); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991).

Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). After the moving party has come forward with the motion showing no issue of fact for trial, the party resisting a summary judgment motion must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* The finding of no factual issue must be based upon the record as a whole. *Id.*

It is the nonmoving party's burden to show that there are genuine issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 320, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The court must view the evidence and its reasonable

inferences in the light most favorable to the party who opposes the motion for summary judgment. *Palermo v. First National Bank and Trust Co.*, 894 F.2d 363, 365 (10th Cir. 1990). Evidence that is merely colorable or not significantly probative is inadequate to withstand a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Redmon*, 934 F.2d at 1155. Immaterial factual disputes will not defeat a motion for summary judgment. *Palermo*, 894 F.2d at 366; *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

### Americans with Disabilities Act of 1990

■ In order to prove her claims under the ADA, Plaintiff must prove (1) that she is a disabled person as defined by the ADA; (2) that she is qualified as defined by the ADA, meaning that she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that she has been discriminated against by the Defendant because of her disability. *White v. York International Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).

Defendant challenges Plaintiff's arguments on all of these criteria, saying Plaintiff is not a disabled person within the meaning of the statute; that she is not qualified and that she has not been discriminated against because Defendant offered her reasonable accommodation.

■ The statute defines qualified individual with a disability as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A major issue in this case is the meaning of the phrase "employment position that such individual holds or desires."

The factual history of this case has been set forth by the parties in great detail and takes up dozens of pages. A greatly abbreviated version will serve our purposes here. Plaintiff was hired by Defendant as a school psychologist for the '90/'91 school year. She was injured during that school year in a fall that has continued to affect her. Her contract was not renewed the following year. She was rehired for the '92/'93 school year in the position of an assessment psychologist, meaning that her primary duty was the testing of students. Just after the start of the '93/'94 school year, Plaintiff resigned from a position similar to the one she had the previous year. She complained that the Defendant had discriminated against her by assigning her to a position that it knew she could not perform.

Plaintiff argues that while she was incapable of performing the essential duties of the position of assessment psychologist, she was capable of performing the duties of a regular school psychologist, as illustrated by her performance during the '90/'91 school year. (Plaintiff's Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment at 3 and 17). She argues that the assessment duties are not essential to the position of school psychologist because they were not part of the position she held during the '90/'91 school year. She insists that the only reasonable accommodation that would be effective would be a transfer to a school psychologist position. Consequently, even assuming all the other criteria to be fulfilled, the first issue in this case is which employment position is the applicable one in terms of the application of 42 U.S.C. § 12111(8)— school psychologist or assessment psychologist?

Plaintiff had filed a grievance regarding the fact that her contract was not renewed for the '91/'92 school year. That grievance was settled in March of 1992. Part of that settlement was an agreement to hire her for a psychologist position for the '92/'93 school year. In July 1992, Plaintiff was informed that her assignment was to an assessment psychologist position. She immediately protested that the assessment position was beyond her physical capabilities. Plaintiff continued to request a transfer to a non-assessment position until she took an extended sick leave that started in February 1993 and continued until the end of the school year. She was told that there were no other positions available. In late June, early July 1993, Plaintiff received her contract for the '93/'94 school year which she signed knowing that

her assignment would again involve primarily assessment responsibilities. She resigned within a week of starting that position. Nevertheless, the position that she held at the time of her resignation was that of assessment psychologist.

Reasonable accommodation may include reassignment to a vacant position. *Daugherty v. City of El Paso,* 56 F.3d 695, 698 (5th Cir.1995) (citing 42 U.S.C. § 12111(9)). "However, the ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." *White* at 362. Likewise, "[t]he ADA does not require employers to modify the actual duties of a job in order to make an accommodation for individuals who are not physically capable of performing them." *Cheatwood v. Roanoke Industries,* 891 F.Supp. 1528, 1537 (N.D.Ala.1995). In a similar vein, "the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of [her] present position." *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir. 1995).

Plaintiff has admitted that she is not physically capable of performing the job of assessment psychologist, with or without any reasonable accommodation other than a transfer. A transfer would obviously have moved her to a position other than assessment psychologist. Because the position that Plaintiff held when this dispute arose was that of assessment psychologist and because Plaintiff cannot perform the essential functions of the position of assessment psychologist, the Court finds that she is not a "qualified individual" within the meaning of the ADA.

Even if the Plaintiff were a qualified individual, the Court finds that she rejected reasonable accommodation. The following facts are undisputed.

Plaintiff started as an assessment psychologist in August 1992. The position included testing students at seven schools. Before she started the position, she informed Defendant that this position would aggravate her disability and requested a transfer to a school psychologist position. (Dyer Depo. p. 314, lines 6–17). In October 1992, Plaintiff requested that her supervisor, Anne Mitchell, intercede for her with the school principals at the schools where she was assigned. (Dyer Depo. p. 334, lines 18–25) Mitchell met with the principals and explained to them Plaintiff's limitations and the pain Plaintiff experienced. (Mitchell Depo. p. 69, line 21, through p. 70, line 11).

Later that month, Plaintiff was evaluated by Dr. David Wong who set forth the following restrictions: sitting for no more than an hour at a time and a maximum of four hours a day and driving for no more than half an hour at a time and a maximum of four hours a day. (Dyer Depo. p. 333, lines 18–23). Plaintiff was told by Mitchell that those restrictions were acceptable and Plaintiff could modify her schedule accordingly. (Dyer Depo. p. 350, line 7 through p. 351, line 9). In January 1993, in a meeting between Plaintiff, Mitchell, Defendant's Director of Employee Relations, Peggy Schwartzkopf, and a representative of Plaintiff's union, Plaintiff again requested a transfer to a school psychologist position. She was told that none were available but was again reassured that her doctor's restrictions could be accommodated. (Dyer Depo. p. 442, line 4 through p. 443, line 10 and p. 447 line 16 through p. 448, line 5). Plaintiff was also told that she would be allowed to apply for any available transfer although as a probationary employee that was normally not allowed. (Dyer Depo.Ex. TTTTT). In February 1993, based on her inability to meet deadlines, Plaintiff requested a permanent extension to turn in reports. The principal she asked agreed that she could have additional time. (Mitchell Depo. Ex. 60).

Defendant has provided evidence of another assessment psychologist, Arnold Goldstein, who also has serious back problems. These problems have resulted in four back surgeries. Goldstein was Plaintiff's full-time replacement when she took sick leave for the last four months of the '92/'93 school year. Goldstein required accommodation similar to that offered to Plaintiff, in terms of sitting

and the necessity to move around. He performed the same duties that were required of Plaintiff when she was an assessment psychologist but felt that he was able to perform his job in a satisfactory manner when so accommodated. (Goldstein Depo. p. 18)

At the end of the '92/'93 school year, Plaintiff was allowed to apply for a transfer position as part of the accommodation agreed to by representatives of Defendant. (Dyer Depo. Ex. KKKKK). Her request for transfer was not received within the time allowed for application. (Dyer Depo. p. 465, line 5 through p. 466, line 17). Plaintiff's contract was renewed for the '93/'94 school year. She was informed in May of 1993 that the assignment would continue to be for an assessment psychologist position but in an area with less driving and with some non-assessment responsibilities. (Mitchell Depo. p. 120, line 24 through p. 121, line 19 and Dyer Depo. Ex. CCCCC). Plaintiff immediately requested a transfer for the '93/'94 school year. Defendant responded that Mitchell would work with Plaintiff to accommodate her in the presently assigned position. (Dyer Depo. Ex. HHHHH). Plaintiff signed the contract on July 1, 1993.

Plaintiff saw Dr. Steinhardt in July 1993. She was required to obtain a release from a doctor before she started the new school year because she had been on sick leave since February 1993. Dr. Steinhardt released Plaintiff for work with the following restrictions: limitations on sitting (20 minutes or less at a time, followed by 2–10 minutes walking or standing, and 4 hours a day maximum); driving (included in the 4 hour maximum per day for sitting); writing (10–15 minutes at a time); lifting (15 pounds); reaching over table (to be avoided); repetitive use of right hand (to be avoided); and reading materials should be elevated to avoid bending neck. (Dyer Depo. p. 503, line 22 through p. 504, line 8 and Dyer Depo. Ex. QQQQQ).

Plaintiff saw Dr. Willingham in early August 1993. Dr. Willingham also released Plaintiff for work with nearly identical restrictions to those of Dr. Steinhardt on sitting, driving, lifting and repetitive motion. (Dyer Depo. Ex. WWWWW).

Defendant acknowledged the restrictions and informed Plaintiff that the restrictions could be accommodated. (Dyer Depo. p. 522, lines 12–21). Plaintiff began work on August 13, 1993. The first week, which was before the students returned to school, was spent in meetings and planning conferences. A meeting was scheduled on August 20, 1993 to plan the accommodations necessary for Plaintiff but Plaintiff indicated through her attorney that she would not be attending the meeting and resigned that morning. (Dyer Depo. p. 522, line 22 through p. 523, line 5). Plaintiff stated that the only accommodation that she would have considered acceptable was a transfer to a school psychologist position. (Dyer Depo. p. 529, lines 13–16). Essentially she wasn't interested in attending the meeting because she wasn't interested in any other accommodations Defendant might be offering. (Dyer Depo. p. 529, lines 2–12).

■■■■ "[T]he purpose of an antidiscrimination act is not to provide those traditionally discriminated against with preferential treatment but rather with treatment equal to that accorded to others." *Robinson v. City of Friendswood,* 890 F.Supp. 616, 620 (S.D.Tex.1995) (citing *Wimberly v. Labor and Industrial Relations Commission of Missouri,* 479 U.S. 511, 107 S.Ct. 821, 93 L.Ed.2d 909 (1987)). "The ADA does not require that an employer provide the best accommodation possible to a disabled employee." *Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1399 (S.D.Ind.1995). "Nor is an employer required to accommodate a disabled employee in exactly the way he or she requests." *Id.*

■■■ Normally the determination of whether an offer of accommodation by an employer is reasonable is a question of fact. "Where the nature of the accommodation offered by an employer is undisputed and no reasonable jury could find the offered accommodation to be unreasonable, however, summary judgment is appropriate." *Kerno v. Sandoz Pharmaceuticals Corporation,* 1994 WL 511289, *7 (N.D.Ill. Sept. 13, 1994).

The Court finds that Plaintiff's belief that there was no possible accommodation that would allow her to do the job of assessment

psychologist is inconsistent with the medical evidence. The restrictions placed on her by both doctors just prior to her resignation were agreed to by the Defendant. Defendant had given Plaintiff a modified assignment for the '93/'94 school year that involved less driving and less assessment activity. The accommodations made by Defendant were reasonable in light of the medical evidence. Defendant was not required to give Plaintiff the accommodation she desired when other accommodations were reasonable. Unfortunately, Plaintiff made up her mind that no matter what Defendant did for her, it would not be enough if Defendant would not transfer her to a school psychologist position. This was a rejection of reasonable accommodation.

For these reasons, Defendant's motion for summary judgment on Plaintiff's first, second and third claims is Granted.

### Colorado Workers' Compensation Act

■ Plaintiff's fourth claim for relief is that Defendant violated the public policy of the State of Colorado set forth in C.R.S. § 8–40–101 et seq. by discharging her in retaliation for filing a worker's compensation claim, for being injured on the job, for being a risk of future workers' compensation liability, or some combination of these factors.

Defendant's motion for summary judgment argues that Plaintiff's fourth claim is barred by the Colorado Governmental Immunity Act, C.R.S. § 24–10–108.

C.R.S. § 24–10–106(1) states that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." It is followed by a narrow list of conditions for which sovereign immunity has been waived. None of those exceptions applies to this case. The definition of "public entity" includes school districts. C.R.S. § 24–10–103(5).

■ "A retaliatory discharge claim is a common law tort claim." Holland v. Board of County Commissioners of County of Douglas, 883 P.2d 500, 508 (Colo.App.1994).

Consequently, wrongful discharge claims are barred by the Governmental Immunity Act. Id., accord, Koch v. Board of County Commissioners of Costilla County, 774 F.Supp. 1275 (D.Colo.1991). Defendant's motion for summary judgment on Plaintiff's fourth claim is Granted.

### Civil Rights Act of 1964

Plaintiff's fifth claim is that Defendant retaliated against Plaintiff for requesting reasonable accommodation and filing a charge of discrimination with the Equal Employment Opportunity Commission.

■ The parties agree that in order to prove a prima facie case of retaliation, Plaintiff must prove 1) that she has undertaken protected opposition to discrimination or has participated in a proceeding arising out of discrimination; 2) adverse action was taken against Plaintiff by the Defendant; and 3) there is a causal connection between the protected activity and the adverse action. Sauers v. Salt Lake County, 1 F.3d 1122 (10th Cir.1993).

■ Plaintiff argues that she engaged in the protected activities of filing workers' compensation claims, requesting accommodation, and retaining attorneys. She claims that in retaliation for these activities, Defendant assigned her to duties that it knew she could not perform.

The settlement of the grievance that Plaintiff filed after the '90/'91 school year provided that Defendant would rehire Plaintiff as a probationary school psychologist and place her in an assignment other than the South Area of the district (where Plaintiff had previously had a conflict with a former supervisor). (Dyer Depo. Ex. XXX). It does not specify the assignment other than that. Soon after being informed that she was being assigned to an assessment psychologist position, Plaintiff had her attorney send Defendant a letter stating that the assessment psychologist position would aggravate her disability and requesting a transfer to a non-assessment position. (Dyer Depo. p. 315, lines 13–18 and p. 318, lines 2–14). Defendant responded by requesting medical substantiation. (Dyer Depo. p. 318, lines 25

through p. 319, line 4). This request resulted in Plaintiff's appointment with Dr. Wong discussed *infra* at p. 5. As stated at that point, Plaintiff was informed that Defendant could reasonably accommodate the limitations placed on her by Dr. Wong and arrangements were made to deal with those restrictions.

Plaintiff has failed to show any reason why Defendant would have known that she was unable to do the job to which Defendant had assigned her. Without the knowledge that Plaintiff would be unable to do the assessment psychologist job, Plaintiff's assignment to that position was not an adverse employment action. In fact, when Plaintiff saw Dr. Wong in October 1992, it had been seven months since she had seen a doctor concerning her back problems.

While it is understandable that Plaintiff was primarily concerned with her other health problems during that time, it is not reasonable to say that when Defendant assigned her to the assessment psychologist position in July 1992, it did so knowing that she would be unable to perform that job based on a physical disability for which she had had no treatment in five months. Plaintiff has failed to show that Defendant took an adverse action against her.

 In addition, even if Plaintiff had proven that Defendant had taken an adverse action against her, she has failed to show any evidence that there was a causal connection between her assignment as an assessment psychologist and her engagement in the protected activities other than her belief that there could be no other reason for her assignment to this difficult position. "[P]laintiff['s] mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988). Likewise Plaintiff's conjecture that there could be no other explanation than retaliation is also an insufficient basis for denial of summary judgment. For these reasons, the Court finds that Plaintiff has failed to prove a *prima facie* case of retaliation. Defendant's motion for summary judgment on Plaintiff's fifth claim is Granted.

In conclusion, IT IS ORDERED:

1. The Defendant's Motion for Summary Judgment is GRANTED.

2. Summary judgment shall enter on the complaint in favor of the Defendant and against the Plaintiff.

3. The Defendants shall be entitled to their costs upon submission of a bill of costs to the Clerk of the Court within ten days of the date of this Order.

4. This civil action is dismissed.