George Gregory JACKSON, Plaintiff,

v.

**ANALYSTS INTERNATIONAL CORP., Defendant.**

George Gregory JACKSON, Plaintiff,

v.

**ANDERSEN CONSULTING, Defendant.**

George Gregory JACKSON, Plaintiff,

v.

**YELLOW TECHNOLOGY SERVICES, INC., et al., Defendants.**

Civil Action Nos. 96–2055–KHV, 96–2056–KHV and 96–2057–KHV.

United States District Court, D. Kansas.

Feb. 12, 1997.

Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, Stephen M. Bledsoe, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for plaintiff.

Gail M. Hudek, Kimberly A. Jones, Hudek & Associates, P.C., Kansas City, MO, Thomas R. Mahler, Analysts Intern. Corp., Minneapolis, MN, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendant Analysts International Corporation's Motion For Summary Judgment* (Doc. # 92), *Defendant Andersen Consulting's Motion For Summary Judgment* (Doc. # 89), and *Defendant Yellow Technology Services. Inc.'s Motion For Summary Judgment* (Doc. # 94), each filed December 13, 1996. Plaintiff claims that defendants Analysts International Corporation ("AiC"), Andersen Consulting ("Andersen") and Yellow Technology Services, Inc. ("YTS") violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12001 *et seq.* Plaintiff claims that he is disabled and that defendants fired him because of his disability. Because the Court finds that plaintiff is not disabled within the meaning of the ADA, defendants' motions are sustained.

### *Summary Judgment Standards*

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party may not rest upon mere allegation or denials of his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

Summary judgment is appropriate unless there is a genuine issue of material fact— meaning that a "reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

### *Factual Background*

The following facts are uncontroverted or where controverted, viewed in the light most favorable to plaintiff.

Plaintiff suffered a broken left tibia and clavicle as a result of an automobile accident in 1984. Plaintiff believes that the clavicle fracture healed in such a way that the bone jabs into his muscle. Plaintiff experiences discomfort and irritation if he wears a shirt and tie which constrict the area around his clavicle. He also has difficulty going up and down curbs and bending down, and his injuries occasionally make it difficult to operate an automobile or do "anything" including to think, speak, hear or concentrate. According to plaintiff these conditions are lessened, but not completely alleviated, when he wears loose fitting clothing. Plaintiff cares for his personal hygiene, food preparation, shopping and house cleaning without assistance, however, and he is able to wear overalls with straps that sit on his collarbone as well as cardigan-type sweaters. In addition, plaintiff occasionally plays racquetball, squash, and golf, and also shoots baskets—physically demanding activities which he lists as hobbies on his current resume. Plaintiff does not claim that his injuries interfere with his ability to engage in these activities.

AiC hired plaintiff as a computer consultant in February 1995. AiC is a contract programming firm which provides temporary computer programming services to clients. AiC hired plaintiff for a temporary assignment at Andersen, which in turn ran a project for YTS (the "BASICS project"). Plaintiff worked on this project at the YTS facility from February 6, 1995, until June 6, 1995, when AiC removed him from the project and terminated his employment.

YTS and Andersen employees are expected to wear dress shirts and ties to work. YTS employees may wear "business casual" attire on Fridays and on the last Friday of each month, they are allowed to wear jeans.

From February 6 to March 13, 1995, and at his job interview with AiC, plaintiff wore a dress shirt and loose tie. During this time, he also wore loose fitting pants (not suit pants) and casual leather shoes with thick cushioned socks.

On March 13, 1995, plaintiff complained to Dr. Gerald McNamara that his leg was causing him discomfort and that he was "hypersensitive" to shirts, ties and other stiff cloth-

ing which irritated his clavicle. He asked Dr. McNamara to recommend that he change his style of dress. Dr. McNamara summarized the results of plaintiff's physical examination as follows:

> Physical exam shows moderate deformity of his left clavicle. Radiographs show excellent healing over this area. He has good range of motion of his shoulder. Tibia shows some scalloping along where they inserted the nail and extracted it. Bone is well healed and there is actually a fusion between the fibula and tibia. Clinically, he appears to have good healing.

> At this point, he wants a statement saying he can't wear tight clothes, and he may have hypersensitivity of this area, although I am surprised he has this much trouble with it. I don't feel I have any further surgical options for him and he is being discharged from my care.

Dr. McNamara gave plaintiff a note stating "recommend more casual type shirt as dress shirts and tie irritate collar bone fracture." Plaintiff gave this note to Peggy Field, a YTS supervisor, and told her that effective immediately, he would be wearing "business casual" clothing to work. Plaintiff also sent Dr. McNamara's recommendation to AiC with a note stating that he had discussed the change with YTS and that "everything [was] fine." After receiving Dr. McNamara's note, defendants did not require plaintiff to wear a tie to work.

Plaintiff asserts that he was well groomed during the remainder of his employment. He did not wear a tie to work after March 13, 1995, but instead wore shirts which he characterizes as "more accommodating, some of which were white button down shirts, other were polo shirts." Plaintiff claims that he wore jeans, tennis shoes or bib overalls to work only on Fridays, when YTS permitted more casual attire.

Defendants assert that although they allowed plaintiff to forego a tie, they expected him to dress in professional "business casual" attire. Defendants believe that plaintiff went beyond dispensing with his tie, and began to dress unprofessionally, wearing Hawaiian print shirts, bib overalls, tennis shoes and

wrinkled pants to work. Defendants claim that plaintiff's informal dress caused problems with other employees who resented the fact that plaintiff was allowed to dress so casually.

Plaintiff knew that defendants expected him to dress in a professional, business-like manner. He also knew that defendants found his attire unacceptable and Peggy Field, the YTS supervisor, told plaintiff that he would be removed from the BASICS project unless he corrected the problem.

AiC removed plaintiff from the BASICS project at YTS because, in part, his business attire was not appropriate by Andersen and YTS standards.[1] AiC ultimately terminated plaintiff's employment because it could not place plaintiff in another job, given his style of dress. Plaintiff claims that he is an expert on "specific workings of a computer and computer language, [and] his livelihood is fixed to the ability to work at the computer itself." Plaintiff presents expert testimony that at least one-third of computer programming jobs in the Kansas City metropolitan area require the programmer to wear a shirt and tie to work. Plaintiff therefore claims that his clavicle hypersensitivity precludes him from a "class of jobs." Plaintiff has previously worked as a computer programmer, however, in an environment which does not require him to wear a shirt and tie. Indeed, he currently works in a computer programming position in such an environment.

Defendants deny that plaintiff is disabled under the ADA. They argue that plaintiff cannot demonstrate a substantial impairment of his ability to perform major life activities (including working) and that plaintiff cannot show any limitation in his ability to perform a class of jobs. Alternatively, defendants argue that they reasonably accommodated plaintiff by allowing him to not wear a tie. Andersen and YTS further argue that they are not plaintiff's "employer" within the meaning of the statute.

### Analysis

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, plaintiff must demonstrate that (1) he is a "disabled" person within the meaning of the ADA; (2) he is "qualified," that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) the employer terminated or otherwise discriminated against him because of his disability. *White v. York Int'l Corp.* 45 F.3d 357, 361 (10th Cir.1995).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff relies on subsections (A) and (C) of § 12102(2) to establish a disability under the ADA.

### A. Failure To Establish A Disability Under The ADA

As a matter of law, plaintiff has failed to demonstrate that his injuries substantially limit him in any major life activity, including his ability to work. Although the ADA does not define major life activities, the Court is guided by EEOC regulations issued to implement the statute. *Bolton v. Scrivner Inc.*, 36 F.3d 939, 942 (10th Cir.1994) cert. denied, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The regulations state that "[m]ajor life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996).

---

1. Andersen and YTS also raise factual issues regarding plaintiff's performance. Plaintiff missed an April 26, 1995, project meeting without notifying the team leader in advance. The record also reflects concern with plaintiff's absence from his work station, discrepancies in his time records and attitude problems regarding the "real project" he was working on.

An individual's impairment constitutes a "disability" under the ADA, however, only if it "substantially limits" a major life activity. An impairment is substantially limiting if it significantly restricts the "condition, manner or duration under which an individual can perform a particular major life activity as compared to ... the average person in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) (1996). Three factors must be considered in determining whether a substantial limitation is present: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the expected permanent or long term impact. *Bolton*, 36 F.3d at 943 *citing* 29 C.F.R. § 1630.2(j)(2).

■ The Court first considers plaintiff's claim that he is substantially impaired in a major life activity other than work. Plaintiff admits that he is able to care for his personal hygiene, food preparation, shopping and house cleaning without assistance. Moreover, plaintiff participates in sports which he lists as hobbies on his current resume. Plaintiff does not claim that his injuries impede his participation in these activities in any way. No reasonable jury could find, on these uncontroverted facts, that plaintiff is significantly restricted as compared to the average person, in major life activities other than work.

■ Nor has plaintiff demonstrated a triable issue of fact whether he is substantially limited in his ability to work. To demonstrate such an impairment an individual must show "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1996). The inability to perform a single, particular job is insufficient. *Id.; Bolton*, 36 F.3d at 942. In addition to the three factors already mentioned (nature and severity, duration, long-term impact), the Tenth Circuit in *Bolton* held that three other factors may be considered when determining whether a plaintiff shows a substantial limitation in the major life activity of working: (1) the geographic area to which the individual has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). *Bolton*, 36 F.3d at 943, 29 C.F.R. § 1630.2(j)(3)(ii) (1996).

The record contains no evidence regarding the nature and severity, duration and long-term impact of plaintiff's alleged impairment, aside from Dr. McNamara's one page memorandum detailing plaintiff's appointment on March 13, 1995, and his note recommending "more casual type shirts because dress shirts and tie irritate [plaintiff's] bone collar fracture." This limited evidence does not afford a substantial and competent basis for evaluating the nature and severity of plaintiff's impairment, its duration or expected duration, or its permanent or long term impact. Such evidence cannot sustain any tenable analysis whether plaintiff is disabled. *See e.g., Dotson v. Electro–Wire Products, Inc.* 890 F.Supp. 982, 990 at n. 2 (D.Kan.1995) (insufficient medical evidence to establish impairment).

Moreover, plaintiff fails to establish that he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes. Plaintiff's expert report indicates that at least one-third of computer programmer positions in the Kansas City metropolitan area require the programmer to wear a shirt and tie. This evidence does not, however, meet the standards set forth in *Bolton*. The fact that plaintiff did not wear a tie at jobs before or after his employment with AiC raises serious doubts that plaintiff is "significantly restricted." Moreover, plaintiff presents no evidence regarding other geographic areas reasonably available to him or his ability to perform

other classes of jobs—either within or outside the computer programming industry.

## B. Defendants Did Not Regard Plaintiff As Having A Disability

■ Plaintiff, in his memorandum in opposition, argues that "[e]ven if [his] physical limitations do not substantially impair his ability to work, he was nonetheless regarded as having such a disability during his employment and therefore is protected by the ADA." Plaintiff argues that Dave Henneberg, an AiC staff manager, regarded him as disabled. Henneberg testified that he believed plaintiff could not perform his job as a computer programmer if he was required to wear a tie because it aggravated his neck. Plaintiff also argues that defendants necessarily recognized him as disabled, because they initially agreed to accommodate his need to dress casually.

The regulations implementing the ADA explain that a person is "regarded as having" an impairment that substantially limits a major life activity if he (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such an impairment; or (3) has none of the impairments defined in paragraph (h)(1) or (2) of Section 1630.2 but is treated by a covered entity as having a substantially limiting impairment.[2] 29 C.F.R. § 1630.2(1) (1996). Plaintiff does not indicate the subsection on which he bases his claim. Under each subsection, however, the appropriate focus is how the impairment affects the attitudes of others. *See MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1444 at n. 2 (10th Cir.1996) *citing Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995).

Plaintiff's argument addresses only the major life activity of working. Accordingly, the Court limits the scope of its analysis to this issue. The legal framework for determining whether defendants regarded plaintiff as substantially limited in his ability to work parallels the Court's prior analysis. To establish that he has a disability under 42 U.S.C. § 12102(2)(C), plaintiff must show that defendants regarded him as being substantially limited in performing either a class of jobs or a broad range of jobs in various classes. *MacDonald,* 94 F.3d at 1445.

The fact that defendants allowed plaintiff to work without a tie does not tend to prove, in and of itself, that defendants regarded plaintiff as unable to perform either a class of jobs or a broad range of jobs in various classes. Without more—and plaintiff has no more evidence as to Andersen and YTS—plaintiff does not raise a triable issue of fact whether these defendants regarded him as disabled.

■ The question is more difficult with respect to AiC. AiC removed plaintiff from the BASICS project in part because Andersen and YTS had complained about his style of dress. AiC then terminated plaintiff's contract because it had no other clients who would allow plaintiff to work in the casual type of attire he had worn to work on the BASICS project. In addition, Henneberg, plaintiff's staff manager at AiC, believed that plaintiff could not perform his job as a computer programmer if required to wear a tie. The fact that Henneberg believed plaintiff was limited in his ability to perform his computer programming job on the BASICS project, however, does not raise a triable issue of fact whether AiC regarded plaintiff as disabled under 42 U.S.C. § 12102(2)(C). That AiC may have regarded plaintiff as unable to perform this single, particular job is insufficient to establish that AiC regarded plaintiff as significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes as compared to the

---

**2.** Paragraphs (h)(1) and (2) define a physical or mental impairment as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine" or "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(1), (2) (1996).

average person. *See* 29 C.F.R. § 1630.2(j)(3)(i) (1996); *MacDonald,* 94 F.3d at 1445; *Bolton,* 36 F.3d at 942.

## C. Plaintiff Is Not Qualified Within The Meaning Of The ADA

■ Even assuming that AiC regarded plaintiff as disabled, plaintiff has failed as a matter of law to demonstrate that he is a qualified individual with a disability. The Tenth Circuit applies a two-part analysis for determining whether a person is "qualified" under the ADA. *See White v. York Intl. Corp.,* 45 F.3d 357, 361–62 (10th Cir.1995). First, the court determines whether the plaintiff could perform the essential functions of his job and second, if the court concludes that the plaintiff is unable to perform the job's essential functions, the court must determine whether any reasonable accommodation by the employer would allow him to perform those functions. *Id. citing Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993).

For purposes of this analysis the Court assumes that plaintiff could not, without accommodation, perform the essential functions of his job with AiC. Thus, the appropriate inquiry is whether reasonable accommodation by AiC would allow plaintiff to do so.

Plaintiff produces evidence sufficient to make a facial showing that reasonable accommodation (dispensing with the dress shirt and tie requirement) is possible. *See White,* 45 F.3d at 361. Accordingly, the burden shifts to AiC to present evidence of its inability to so accommodate. *Id.* AiC asserts that it terminated plaintiff because it had no clients who would allow plaintiff to work in his casual style of dress.

■ Although EEOC Guidelines provide that reassignment may be considered a reasonable accommodation, the ADA does not require an employer to create a new position to accommodate a disabled employee. *See* 29 C.F.R. § 1630.2(o)(2)(ii) (1996). *See also White,* 45 F.3d at 362; *Dyer v. Jefferson County Sch. Dist. R–1,* 905 F.Supp. 864, 869 (D.Colo.1995); *Riblett v. Boeing Co.,* 1995 WL 580053 (D.Kan.1995). Thus, plaintiff must come forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut AiC's position. *White,* 45 F.3d at 361.

Plaintiff fails to effectively rebut AiC's evidence of inability to accommodate. Indeed, plaintiff agrees with AiC's proffered explanation. In his response to AiC's statement of uncontroverted facts plaintiff asserts "[i]mmediately after [his] removal from the [BASICS] project, AiC terminated [him] from his employment because it was unable to find a client that would allow [him] to dress casually."

As with discrimination cases generally, plaintiff at all times bears the ultimate burden of persuading the trier of fact that he was the victim of illegal discrimination based on his disability. *Id. citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993). Because plaintiff admits that AiC had no clients with positions available for him (as accommodated), the Court finds that there exists no genuine issue of material fact whether plaintiff was a "qualified individual" within the meaning of the ADA. *See e.g. Dyer,* 905 F.Supp. at 869 (plaintiff not qualified individual where she admittedly was not capable of performing job with or without accommodation other than transfer).

Because the Court finds that plaintiff has failed to establish a prima facie case of disability discrimination, it need not address whether Andersen and YTS were plaintiff's employer under the statute.

**IT IS THEREFORE ORDERED** that *Defendant Analysts International Corporation's Motion For Summary Judgment* (Doc. # 92) filed December 13, 1996, be and hereby is sustained.

**IT IS FURTHER ORDERED** that *Defendant Andersen Consulting's Motion For Summary Judgment* (Doc. # 89) filed December 13, 1996, be and hereby is sustained.

**IT IS FURTHER ORDERED** that *Defendant Yellow Technology Services, Inc.'s Motion For Summary Judgment* (Doc. # 94) filed December 13, 1996, be and hereby is sustained.