**Jack L. DAVOLL; Deborah A. Clair; and Paul L. Escobedo; on behalf of themselves and a class of persons similarly situated, Plaintiffs,**

v.

**Wellington WEBB, in his capacity as the Mayor of the City and County of Denver; The City and County of Denver; David L. Michaud, in his capacity as the Chief of the Denver Police Department; Elizabeth H. McCann, in her capacity as the Manager of Safety for the City and County of Denver; Civil Service Commission, for the City and County of Denver, Defendants.**

Civil Action No. 93–K–2263.

United States District Court,
D. Colorado.

Oct. 10, 1996.

---

David C. Feola, Denver, CO, Marilee E. Langhoff, Littleton, CO, for Plaintiffs.

J. Wallace Wortham, Jr., Assistant City Attorney, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

### I. *Introduction.*

Plaintiffs Jack L. Davoll, Deborah Clair and Paul Escobedo bring this action against the City and County of Denver ("the City"), Wellington Webb, in his capacity as Mayor of the City and County of Denver, David L. Michaud, in his capacity as the Chief of the Denver Police Department, Elizabeth H. McCann, in her capacity as Manager of Safety for the City and County of Denver and the Civil Service Commission of Denver.

Plaintiffs seek monetary damages, declaratory and injunctive relief pursuant to:

(A) The Americans with Disabilities Act 42 U.S.C. §§ 12101–12213 ("the ADA"), on the grounds that:

 (1) They are "otherwise qualified individuals" within the meaning of the ADA and

 (2) As such, the City failed to provide "reasonable accommodation" by not offering Plaintiffs permanent light duty positions and/or by not reassigning Plaintiffs to other positions within the City;

 (3) The City has failed to establish policies and procedures to facilitate the implementation of the ADA, thereby denying Plaintiffs the protection afforded by that statute;

 (4) The City has engaged in disparate treatment of police officers with disabilities, whereby some remain employed at full salary and others are required to retire; and

 (5) The City has inconsistently applied the "essential job functions criteria" in violation of the ADA.

(B) 42 U.S.C. § 1983 and the Equal Protection and Due Process Clauses of the United States Constitution, on the grounds that:

 (1) The ongoing disparate treatment of disabled police officers by the City, whereby some are retained at full salary and others are required to retire at reduced benefits and salary, violates the Equal Protection Clause;

 (2) The disparate application of the "essential job functions" criteria by the City violates the Equal Protection Clause; and

 (3) The City's implementation of policies and procedures pursuant to the requirements of the ADA in other City departments, but not within the Denver Police Department, violates the Equal Protection Clause.

Defendants have filed a motion for summary judgment seeking:

(A) To dismiss Webb, Michaud, McCann and the Civil Service Commission, because the City has been named as a defendant in the action;

(B) Judgment on the ADA claim because:

 (1) Plaintiffs have not met the administrative prerequisites to bringing an individual ADA action, and

 (2) Plaintiffs are not "otherwise qualified individuals" within the meaning of the ADA;

(C) Judgment on the 42 U.S.C. § 1983 claim, Equal Protection and Due Process claims, because:

 (1) There is no evidence of unconstitutional custom and policy,

(2) Plaintiffs fail to state a due process claim,

(3) Plaintiffs fail to state an equal protection claim, and

(4) The ADA provides the exclusive remedy for Plaintiffs' equal protection claim.

In addition to Defendants' Motion For Summary Judgment, Plaintiffs' Response and Defendants' Reply, the United States has filed an *Amicus Curiae* brief pertaining to the ADA interpretation issues raised in this case.

## II. *Background.*

Plaintiffs were patrol officers in the Denver Police Department who sustained work-related injuries which rendered them unable to perform the essential functions of their jobs as police officers, particularly, the ability to make a forcible arrest and to fire a weapon.

Consequently, the Denver Police Department assigned each Plaintiff to a temporary light duty position. When Plaintiffs' eligibility for light duty positions expired, a medical determination was made that they could not return to full duty, and each was given a permanent light duty position for an indefinite period of time. Plaintiffs subsequently sought and were granted occupational disability retirement from the Fire and Police Pension Association.

## III. *Standard for Summary Judgment.*

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden of establishing the non-existence of a material fact is initially on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *Thrifty Rent–A– Car Sys., Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1194 (10th Cir.1994). When the moving party has met its initial burden, it then shifts to the non-moving par-

ty to establish that there is a triable issue of fact. *Id.* A triable issue of fact exists where "there is sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). The facts presented, and the appropriate inferences that may be drawn from them, must be construed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. However, in the face of a properly supported motion for summary judgment, the nonmoving party may not rely on unsupported allegations without "any significant probative evidence tending to support the complaint." *Id.* at 249, 106 S.Ct. at 2510.

## IV. *Merits.*

### A. *Dismissal of Individual Defendants.*

Defendants assert naming both the City and its employees in their official capacity is redundant, and therefore the City officials should be dismissed as individual defendants in the action. Similarly, Defendants argue naming the Civil Service Commission independently is redundant and this entity should be dismissed as well.

Plaintiffs offer no objection to the dismissal of the Civil Service Commission, which they claim was added as a Defendant "when the Denver Police Department and Career Service Commission w[ere] engaging in some finger-pointing." (Pls.' Resp.Defs.' Mot. Summ.J. at 23.)

However, Plaintiffs assert Webb, Michaud and McCann are being sued in both their official and personal capacities because (1) Plaintiffs are seeking declaratory relief that these individuals violated their constitutional and civil rights, and (2) Plaintiffs are seeking damages against all Defendants under 42 U.S.C. § 1983. Plaintiffs concede the complaint could have been more specific on this issue and the caption could be read as asserting an official capacity claim only.[1] However, Plaintiffs contend damages were clearly sought against all Defendants and there is no

---

1. The Complaint specifically names each Defendant in his or her official capacity. (Pls.' Sec.

Am.Compl. ¶ 1.)

heightened pleading standard for these claims.

■ The Supreme Court recognizes that state officers may be held personally liable for damages under 42 U.S.C. § 1983 based upon actions taken in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 22, 112 S.Ct. 358, 360, 116 L.Ed.2d 301 (1991); *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 107, 130 L.Ed.2d 55 (1994). Further, "state officials can be sued in their individual capacities— even if merely performing statutory duties— for injunctive and declaratory relief." *Clajon Prod. Corp. v. Petera,* 70 F.3d 1566, 1571 n. 9 (10th Cir.1995).

■ Where the capacity in which the official is sued under § 1983 is at issue, one applies the two-part test set forth in *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). *Houston v. Reich,* 932 F.2d 883, 885 (10th Cir.1991); *Doe v. Douglas County School District RE–1,* 775 F.Supp. 1414, 1415 (D.Colo.1991). Under this test, the court first looks to the complaint itself in determining whether a claim is brought against an official in his or her personal or official capacity. If the complaint is clear, the designation of the parties is accepted at face value. If the complaint is ambiguous, the appropriate capacity must be determined by reviewing the "course of the proceedings."

■ In the present case, the caption of the complaint is clear, rendering consideration of the "course of the proceedings" unnecessary. The caption of the Second Amended Complaint and Jury Demand, like that of the initial complaint, names the individual Defendants as follows: "Wellington Webb, in his capacity as the Mayor of the City and County of Denver ... David L. Michaud, in his capacity as the Chief of the Denver Police Department ... Elizabeth H. McCann, in her capacity as the Manager of Safety for the City and County of Denver." Therefore, under the *Kentucky v. Graham* test, this is an action against these officials in their respective official capacities, regardless of the manner in which damages were plead. *See Doe v. Douglas County Sch. Dist.,* 775 F.Supp. at 1415 (where the assertions were against a defendant "in his capacity as School Psychologist," the complaint was "clear" under *Kentucky v. Graham* as being against the defendant in his official capacity).

■ The Supreme Court recognizes that municipalities and other local government units are "persons" to whom § 1983 applies.[2] *Monell v. Dep't of Social Services,* 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978). A § 1983 claim is properly plead against a municipality "either by naming the municipality itself or by naming a municipal official in his or her official capacity." *Stump v. Gates,* 777 F.Supp. 808, 816 n. 3 (D.Colo.1991), *aff'd,* 986 F.2d 1429 (10th Cir.1993). "Naming either is sufficient. Naming both is redundant." *Id.* "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent...." *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. "Where a suit contains both entity and official capacity claims, the only defendant is the entity." *Doe v. Douglas County Sch. Dist.,* 775 F.Supp. at 1416.

■ I conclude the individual Defendants are sued in their official capacity only and naming both them and the municipality in a § 1983 action is redundant. As regards the remaining cause of action, the ADA "does not provide for individual liability, only for employer liability." *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *see also EEOC v. AIC Sec. Inv.,* 55 F.3d 1276, 1279–82 (7th Cir.1995).

Further, both parties agree the dismissal of the Civil Service Commission as a Defendant is appropriate. I therefore dismiss the action against Webb, Michaud, McCann and the Civil Service Commission, leaving the City as the sole Defendant.

---

2. 42 U.S.C. § 1983 provides in relevant part:
 [A]ny person, who, under color of law, statute, ordinance, regulation, custom or usage of and State shall subject, or cause to be subjected, any person ... to the deprivation of any rights, privileges or immunities secured by the Constitution of the United States shall ... be liable to the party injured in any action at law, suit in equity or other proper proceeding for redress.

## B. *The ADA Claims.*

### (1) *Administrative Prerequisites.*

■ Defendants assert Plaintiffs failed to meet the administrative prerequisites to bring an individual action under the ADA, and therefore, the ADA claim should be dismissed. Defendants contend Plaintiffs bring this action under Title I of the ADA, as the Plaintiffs' Second Amended Complaint alleges jurisdiction pursuant to 42 U.S.C. § 12117(a), which specifies the enforcement procedures of Title VII.[3]

Defendants contend Title VII procedures require the filing of a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") within 180 days of the alleged unlawful employment practice and the issuance by the EEOC of a "right-to-sue" letter before a Title VII action may be commenced in federal court. *See* 42 U.S.C. § 2000e–5(e).

Defendants assert Plaintiffs Clair and Escobedo did not file charges regarding the alleged unlawful employment practice with the EEOC, nor did Clair and Escobedo receive a "right-to-sue" letter from the EEOC. Defendants acknowledge Davoll did timely file a complaint with the EEOC, but assert he, too, did not receive a "right-to-sue" letter from the EEOC. Defendants further allege Clair's claims are not covered under the ADA, because she retired before the effective date of the statute.

Plaintiffs claim the present action is being brought under both Title I and Title II of the ADA. They assert the City is subject to the ADA under the provisions applicable to state and local governments under Title II of the Act. However, they argue the relevant regulations pertaining to Title II impose only the substantive requirements of the Title I employment provisions on Title II defendants rather than imposing Title I procedural requirements on Title II plaintiffs. *See Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276, 1280 (W.D.Wis.1993) (analyzing 29 C.F.R. § 35.140(b)(1) and its reference to the relevant EEOC regulations found in 29 C.F.R. part 1630).

Plaintiffs maintain the remedies under Title II of the ADA are those of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, *see* 42 U.S.C. § 12133, which contain no requirement for the exhaustion of administrative remedies before commencing an action in federal court. Plaintiff Clair further rejects the contention that her claim under the ADA is barred because it accrued before the effective date of the ADA.

In addition, Plaintiffs submit a "right to sue letter," dated February 29, 1996, issued by the Department of Justice ("DOJ") in supplementation of their Reply to the Defendants' Motion to Dismiss. (Pls.' Resp.Defs.' Mot.Summ.J., Ex. 22.) Defendants oppose my consideration of this document in connection with their motion for summary judgment. They assert because the letter was placed before the court after the Motion was submitted, it should be stricken. Defendants contend under Federal Rule of Civil Procedure 56(c), this letter is not part of the "pleadings, depositions, answers to interrogatories, and admissions *on file* " at the time the Motion was presented. Defendants also contest the DOJ's authority to issue such a letter.

It is unclear from Plaintiffs' Second Amended Complaint and Jury Demand whether this action is brought under Title I or II of the ADA, or both. Defendants correctly state Plaintiffs allege jurisdiction pursuant to 42 U.S.C. § 12117(a) and 2000e–5(f)(1) and (3), which are direct references to Title VII, and therefore invoke the enforcement procedures applicable to a Title I action. (Pls.' Sec.Am.Compl. ¶ 12.) However,

---

3. The ADA is divided into three "Titles" or "Subchapters". Title I captioned "Employment," prohibits discrimination by a "covered entity" against a "qualified individual with a disability" in the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). Title II captioned "Public Services" prohibits discrimination by a "public entity" against a "qualified individual with a disability" in the "benefits, services, programs or activities" of the public entity. 42 U.S.C. § 12132.

Each title of the ADA has its own set of enforcement procedures. Title I of the ADA incorporates the enforcement procedures of Title VII, and Title II of the ADA adopts the enforcement procedures of Section 505 of the Rehabilitation Act of 1973, i.e., Title VI.

the first section of the complaint entitled "Nature of Claims," states relief is sought pursuant, *inter alia,* to ADA, 42 U.S.C. §§ 12101–12213 (1990), which statutory sections incorporate both Titles I and II of the ADA. (*Id.* ¶ 1.) In addition, Plaintiffs also cite "the ADA" (without specifying a title) as providing the basis of the first claim for relief. (*Id.* ¶ 56.)

 In determining whether this action is brought under Title I or Title II of the ADA, one is not confined to the formal jurisdictional allegation, but rather may consider the substance of the entire complaint. *See Vukonich v. Civil Service Comm'n,* 589 F.2d 494, 496 n. 1 (10th Cir.1978) (citing 5 Charles A. Wright & Arthur P. Miller, *Federal Practice and Procedure* §§ 1206, 1209 (1969)). "[F]ailure to name the particular statute, treaty or section under which an action arises is not fatal if the remainder of the complaint shows that a federal question actually is involved or relied upon by the pleader [thus revealing a basis for 28 U.S.C. § 1331 jurisdiction.]" 5 Charles A. Wright & Arthur P. Miller, *supra,* § 1209 (1990).

 The summary judgment standard requires consideration of the facts presented in the light most favorable to the Plaintiffs. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Adopting this approach, I find that part of the complaint addressing the nature of the claims asserted refers to all-encompassing statutory sections of the ADA and therefore includes a claim under Title II of that act.

Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" includes "any State or local government." 42 U.S.C. § 12131(A). Discrimination prohibited under Title II includes employment discrimination, as the regulations promulgated thereunder provide, "[n]o qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.104(A) (1995).

 The enforcement procedures under Title II of the ADA are those of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, 42 U.S.C. § 12133. Generally, when an action is brought under Title II of the ADA, the enforcement procedures contained in the Rehabilitation Act do not require the exhaustion of administrative remedies by non-federal employees. *Pushkin v. Regents of Univ. of Colorado,* 658 F.2d 1372, 1381 (10th Cir. 1981).[4] In addition, " 'every court of appeals which has considered the issue whether to apply the exhaustion requirement to non-federal employees under the statute [29 U.S.C. § 794], has decided not to apply the requirement.' " *Gorsline v. State of Kansas,* 1994 WL 129981, at *2 (D.Kan. Mar. 4, 1994) (quoting *Tuck v. HCA Health Services of Tennessee, Inc.,* 7 F.3d 465, 471 (6th Cir. 1993)) (citing various circuit court decisions including *Pushkin* ). Further, the Department of Justice regulations interpreting Title II of the ADA state the pursuit of administrative remedies under Title II is optional, and plaintiffs may proceed directly to federal court if they choose to do so. *See Petersen,* 818 F.Supp. at 1279 (analyzing exhaustion requirements and concluding a plaintiff need not exhaust administrative remedies before bringing a Title II claim in federal court).

I conclude there is no compulsion to exhaust administrative procedures before bringing an action pursuant to Title II of the ADA. Because I find the subject ADA cause of action may be read as including an ADA

---

4. *Pushkin* is a pre-ADA case. However, it has been widely cited in many other circuit courts for the premise that exhaustion of administrative remedies is not required by non-federal employees bringing suit under Title II of the ADA. *See, e.g., Tuck v. HCA Health Services of Tennessee, Inc.,* 7 F.3d 465, 471 (6th Cir.1993); *Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *Morgan v. United States Postal Service,* 798 F.2d 1162, 1165 (8th Cir. 1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1321 (7th Cir.1984); *Shuttleworth v. Broward County,* 639 F.Supp. 654, 657 (S.D.Fla.1986); *Turillo v. Tyson,* 535 F.Supp. 577, 585 (D.R.I.1982).

Title II claim, I reject Defendants' argument they are entitled to judgment on the ADA claim on account of Plaintiffs' failure to satisfy administrative prerequisites.[5]

With respect to the applicability of the ADA to Plaintiff Clair's claims, virtually all of the courts considering whether the ADA applies retroactively have concluded that it does not. *Aramburu v. Boeing Co.,* 1993 WL 544567, at *1 (D.Kan. Dec. 29, 1993) (citing various district court cases rejecting retroactive application of the ADA). Defendants assert the ADA does not apply to claims which arose before the effective date of the ADA, July 26, 1992. Plaintiffs contend, however, that the employment provisions under Title II became applicable to the City of Denver effective January 26, 1992. Plaintiff Clair separated from service on April 15, 1992, which falls between the disputed effective dates.

■ Defendants appear to rely upon the effective date of Title I as the basis for their argument. *See* 42 U.S.C. 12111 (effective July 26, 1992). Plaintiffs, on the other hand, look to the effective date of Title II. *See* 42 U.S.C. 12131 (effective January 26, 1992). Since I conclude Plaintiffs' ADA claim may be read as including a claim under Title II of the ADA, Plaintiff Clair's claim is not extinguished, because she left the Denver Police Department approximately two and one half months after Title II became effective. *See Petersen,* 818 F.Supp. at 1279 (explaining that Congress, by the inclusion of a specific employment provision in Title II, ensured that all public employers, regardless of size, would be subject to the provisions of the ADA beginning January 26, 1992).

### (2) *Plaintiffs' Status as "Qualified Individuals with Disabilities."*

The ADA provides "no covered entity shall discriminate against a qualified individual

with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).[6] The ADA defines a "qualified individual with a disability" as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The Tenth Circuit has held that to qualify for relief under the ADA, a plaintiff must establish:

(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essentials functions of the job; and (3) that the employer terminated him because of his disability.

*White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

The *White* court adopted a two-part test for determining whether a person is qualified within the meaning of the ADA:

"First we must determine whether the individual could perform the essential functions of the job, i.e. functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions."

*White,* 45 F.3d at 361 (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th

---

5. Because I conclude the ADA claim should not be dismissed for this reason, I do not reach the issue of whether Plaintiffs have satisfied the necessary administrative requisites for proceeding under Title I of the ADA.

6. Title I of the ADA prohibits employment discrimination on the basis of disability by public and private employers alike. 42 U.S.C. § 12111 *et seq.* Title II prohibits employment discrimination on the basis of disability in all services,

programs or activities of state and local government entities. 42 U.S.C. § 12131 *et seq.* Thus, while Title II also prohibits employment discrimination, Title II regulations adopt Title I standards for review of employment claims against public entities such as Defendants. 28 C.F.R. § 35.140. Accordingly, hereafter, citations are to Title I and Title I regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") at 29 C.F.R. § 1630 *et seq.* (1995).

Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

Defendants maintain Plaintiffs do not meet the requirements for status as "qualified individual[s] with disabilit[ies]" under the ADA. 42 U.S.C. § 12111(8). Under the aforesaid analysis, the first task is to define the "essential functions" of the jobs at issue in this case. *White,* 45 F.3d at 362.

Defendants contend according to the job description and criteria utilized by the Denver Civil Service Commission, the ability to effect a forcible arrest and to fire a weapon are essential functions of the position of police officer. They also rely on *Coski v. City and County of Denver,* where the court concluded "the ability to fire a weapon and to make a forceful arrest is an essential job function because it is reasonable to require this of all police officers." 795 P.2d 1364, 1367 (Colo.App.1990).

Defendants further contend a police officer who is unable to perform the essential functions of firing a weapon and effecting a forcible arrest is a danger to himself or herself, to other officers and to the public. *See id.* at 1368. They argue, under the ADA, a disabled individual is not "qualified" if he or she poses a direct threat to the health and safety of others that reasonable accommodation will not eliminate. *See* 42 U.S.C. § 12113(a).[7]

Plaintiffs respond the essential functions criterion submitted by Defendants became effective in August of 1993 (after Plaintiffs were terminated) and explicitly applies only to new officers who go through the police academy and then on to the patrol division. Defendants reply the criteria are substantially similar to the prior essential function standards set forth in the job description for Patrol Officer Fourth Grade, and includes the basic functions and tasks set forth therein.

Plaintiffs also contest Defendant's reliance on *Coski* as dispositive of the essential job functions of a police officer. They argue *Coski* "no longer holds water" because it does not take into account the fact that many police officers currently serving are not able to perform these functions, nor the fact that many police jobs have become "civilianized" since the case was decided. (Pls.' Resp. Defs.' Mot.Summ.J. at 13–14.)

Plaintiffs instead urge the court to examine the job description for "police officer" by differentiating between the essential functions of patrol and non-patrol officers and to adopt the test regarding the applicability of essential job functions criteria applied in *Simon v. St. Louis County,* 656 F.2d 316 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982).[8]

In *Simon,* the Eighth Circuit reversed the district court's grant of summary judgment and remanded with the instruction that the district court determine whether the requirements for police officers as testified to at trial were "reasonable, legitimate and necessary requirements for all positions within the department" and whether they "were uniformly required of all officers." *Id.* at 321. "If not uniformly required, they should not be considered actual requirements for all positions." *Id.*

Plaintiffs argue under the *Simon* test, the essential function criteria for police officers would not prove the same for patrol positions as for non-patrol positions, i.e. the resistive arrest and firearm functions would be nonessential for non-patrol positions. Plaintiffs therefore maintain they were and are "qualified individuals" within the meaning of the ADA because they were qualified to perform the non-patrol commissioned positions within the police department which they desired,

---

7. It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.
42 U.S.C. § 12113.

8. The *Simon* court was concerned with the interpretation of "otherwise qualified handicapped individual" in § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. However, "Congress intended relevant case law developed under the Rehabilitation Act ... to be generally applicable to analogous inquiries under the ADA." *Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714, 721 (D.Colo.1995).

and for which the resistive arrest and firearms functions (which they were restricted from performing) were non-essential.

Defendants persist that it is undisputed that Plaintiffs were given fitness-for-duty examinations which placed them on permanent restriction precluding them from involvement in restive activities and/alteration. They maintain the job description of the position of police officer for the City establishes Plaintiffs could not perform the function of police officer without reasonable accommodation. The issue, Defendants state becomes whether the accommodation sought by Plaintiffs is reasonable.

█ The EEOC regulations define "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The regulations further set out what constitutes evidence of whether a particular function is essential including the employer's judgment as to which functions are essential and written job descriptions. *Id.* (n)(2). *See also* 42 U.S.C. § 12111(8). "Deciding whether specific job duties are essential job functions requires a court to engage in fact-specific inquiries." *Hogue*, 875 F.Supp. at 721.

█ I find Plaintiffs have not raised a genuine issue of material fact as to the essential functions of a police officer including the ability to effect a forcible arrest and to fire a weapon. These requirements could not be eliminated without fundamentally altering the nature of the job of police officer. *See White*, 45 F.3d at 362. Nor have Plaintiffs raised a genuine issue of fact regarding their inability with or without accommodation to perform the essential functions of the employment position they hold, namely that of police officer.

However, the inquiry must go further because the ADA defines "qualified individual with a disability" as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The ADA states "reasonable accommodation," may include:

> job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B) (emphasis added). *See also* 29 C.F.R. § 1630.2(*o*)(2)(ii).

Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

Defendants rely on *Champ v. Baltimore County*, 884 F.Supp. 991, 999–1000 (D.Md. 1995), *aff'd*, 91 F.3d 129 (4th Cir.1996), for their argument that Plaintiffs are not qualified individuals eligible for reassignment because they cannot perform "the essential functions" of any "vacant position" and, because the mere existence of some non-patrol positions in which an officer would not be expected to make a forcible arrest as part of his/her duties does not negate the conclusion that the essential functions of the job apply to all positions. However, here, unlike in *Champ*, there exist several positions within the Denver Police Department's Classified Service (police and fire personnel system) or the City's Career Service (civilian employee personnel system) where the ability to fire a weapon or make a forcible arrest are not factors.

Defendants further argue the City is not obligated to reassign Plaintiffs to non-police positions on the City payroll, i.e. Career Service Authority Positions, unless it reassigns non-disabled employees to non-police jobs on the City payroll. Citing *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996), they argue the ADA "does not require affirmative action in favor of individuals with disabilities, in the sense of

requiring that disabled individuals be given priority in hiring or reassignment over those who are not disabled." (Defs.' opening Br. Supp.Mot.Summ.J. at 12.) *Daugherty*, however, concerned a part-time employee plaintiff who was diagnosed as an insulin-using diabetic, and demanded as reasonable accommodation, a promotion to a full-time job, i.e. assignment to a higher status vacancy.[9]

The Tenth Circuit, likewise, has recognized that although the EEOC guidelines provide that reassignment may be considered reasonable accommodation, *see* 29 C.F.R. § 1630.2(*o*)(2)(ii), "the ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." *White*, 45 F.3d at 362. Here, there is no evidence, however that Plaintiffs seek promotion as a reasonable accommodation.[10]

The ADA, unlike the Rehabilitation Act, requires employers to move beyond the traditional analysis used to appraise non-disabled workers and to consider reassignment to a vacant position as a method of enabling a disabled worker to do the job without creating undue hardship. *See, e.g., Leslie v. St. Vincent New Hope, Inc.*, 916 F.Supp. 879, 887 (S.D.Ind.1996).

I conclude the ADA's reasonable accommodation requirement includes reassignment and imposes a duty on employers to consider that avenue. The City has failed to show it is entitled to judgment as a matter or law on the basis that each Plaintiff is not a "qualified individual with a disability."

C. *Equal Protection and Due Process claims under 42 U.S.C. § 1983.*

(1) *The ADA as the Exclusive Remedy for Equal Protection Claims.*

Plaintiffs' Second Claim for Relief is under 42 U.S.C. § 1983. Section 1983 does not create substantive rights but serves only as " 'a remedy for violations of rights secured by federal statutory and constitutional law.' " *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 977 (10th Cir.1991) (quoting *Tafoya v. Adams*, 816 F.2d 555, 558 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987)). Plaintiffs' § 1983 claim is based on Defendants' alleged violations of the Equal Protection Clause and the Due Process Clause of the United States Constitution. (Second Am.Compl. & Jury Demand ¶¶ 64–66.)

Defendants assert the ADA is the exclusive remedy for the Plaintiffs' equal protection claims. They attempt an analogy stating the ADA, like Title VII, comprises a comprehensive and detailed enforcement scheme. "The legislative purpose stated in the ADA makes it clear that Congress intended for the ADA to serve as the enforcement scheme for discrimination of [sic] disabled employees." (Defs.' Opening Br. Supp.Mot.Summ.J. at 15.)

Defendants acknowledge some courts have allowed plaintiffs to pursue § 1983 employment discrimination claims where the rights allegedly violated did not derive solely from the employment statutes. However, here, they maintain, Plaintiffs' § 1983 equal protection claim is based on rights derived solely from the ADA and should be dismissed.

Contrary to Defendants' position, the ADA statute and legislative history establish Congress' intent to allow "simultaneous recovery" under compatible state and federal statutes. *Mangin v. Westco Sec. Sys., Inc.*, 922 F.Supp. 563, 567 (M.D.Fla. 1996). Further, adopting Defendants' Title VII analogy, "[i]f the § 1983 claim is brought on a distinct right 'independent' from the Title VII rights, then the ... employee alleg-

---

9. The *Daugherty* court acknowledged: "To be sure, under the ADA a reasonable accommodation '*may* include ... reassignment to a vacant position.' " 56 F.3d at 698 (quoting 42 U.S.C. § 12111(9)) (emphasis in original).

10. Defendants also argue the City's Charter bars transfers and reassignments between the Classified and the Career Services. They do not however cite any specific provision in the Charter which expressly prohibits reassignment between the two personnel services. Even if such provision exists in the Charter, it would be preempted by the ADA, which specifically directs employers to modify existing practices and policies which do not conform with it.

ing discrimination may bring claims under both §1983 and Title VII." *Morris v. State of Kansas Department of Revenue,* 849 F.Supp. 1421, 1424 (D.Kan.1994) (citing *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir.1991)). As stated in *Notari v. Denver Water Department:*

> [a] §1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the §1983 claim also violates Title VII.... Because the substantive legal standards that govern these claims emanate from different sources, as long as the substantive legal bases for the claims are distinct, our "independence" requirement is satisfied and Title VII does not foreclose an employment discrimination [sic] plaintiff's §1983 claim.

971 F.2d 585, 587 (10th Cir.1992).

■ Here, Plaintiffs allege, albeit based on the same facts as those underlying their ADA claims, that Defendants have violated their rights to equal protection and due process. If Plaintiffs can meet the requirements for establishing these constitutional violations, the substantive legal bases for their §1983 claims will be distinct from their ADA claim and will not be precluded by the latter. Accordingly, this argument of Defendants must fail.

### (2) *Unconstitutional Custom and Policy.*

Defendants assert Plaintiffs fail to identify any unconstitutional custom or policy in advancing a claim under 42 U.S.C. §1983 which evinces either a denial of equal protection or due process of law. They claim Plaintiffs instead predicate their §1983 claim on the City's alleged failure to establish policies and procedures to implement the provisions of the ADA.

Defendants argue government entities may only be held liable under §1983 where an alleged constitutional violation results from an official policy or custom or a governmentally sanctioned act, and mere action by a governmental entity is not sufficient to establish an official policy. They contend the acts of municipal employees are distinguishable from those of the municipality itself, and municipal liability is therefore limited to the action for which the municipality is actually responsible. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986).

Plaintiffs maintain the City cannot escape liability for express and informal discriminatory disability policies, practices and customs, whereby officers with disabilities were taken off the payroll such that retirement was the only option.

■ "The touchstone of a §1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution." *Cannon v. City and County of Denver,* 998 F.2d 867, 877 (10th Cir.1993). In order to establish municipal liability in a §1983 action, Plaintiffs must show "(1) the existence of a policy or custom and (2) there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood,* 997 F.2d 774, 781 (10th Cir. 1993).

■ Plaintiffs allege they have suffered financial loss due to the receipt of reduced salary and benefits after being offered disability retirement from the police force. Plaintiffs cannot point to a specific, written "policy" of dismissing disabled officers within the Denver Police Department. However, Plaintiffs' affidavits intimate a widespread practice of retiring disabled officers.[11] While this evidence does not conclusively prove the existence of such general municipal practice, when seen in the light most favorable to Plaintiffs, it creates a genuine issue of material fact as to whether a widespread practice

---

11. *See, e.g.,* Pls.' Resp. Defs.' Mot.Summ.J., Ex. 1, Escobedo Aff., ¶14 (stating Lt. Cooper had told him "either you can do this job or you can't, and if you can't, you have to retire" and that the ADA was a "can of worms" and "nobody will know until the first lawsuit is filed"); Ex. 2, Davoll Aff., ¶26 ("I only applied for FFPA occupational disability when it became clear that defendants would not reasonably accommodate me by allowing me to continue in a non-commissioned position"), Ex. 3, Clair Aff., ¶10 ("I was told unequivocally by Sgt. Maes that the administration was not going to allow me to remain a police officer and they would not help me find another position").

exists " 'so permanent and well settled as to constitute a "custom or usage" with the force of law.' " *See Valanzuela v. Snider,* 889 F.Supp. 1409, 1418 (D.Colo.1995) (citing *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). Accordingly, Defendants are not entitled to judgment on the § 1983 claim on this threshold issue.

### (3) *Due Process Claim.*

Defendants claim Plaintiffs do not specify what process they have been denied, therefore the due process claim should be denied for vagueness alone. Defendants also assert Plaintiffs received the benefits of procedural due process protection before the Fire and Police Pension Association ("FPPA") made its determination. Defendants note the elements of a procedural due process claim are notice and the opportunity to be heard. They assert Plaintiffs were examined by three physicians, provided an opportunity to be heard before the FPPA, and given the right to appeal. Plaintiffs also had the right to request a Civil Service Commission investigation of their cases, but did not exercise that right. They also contend Plaintiffs cannot prove the alleged due process violation proximately caused any provable damages.

Defendants further argue if Plaintiffs challenge the process afforded by the FPPA, Plaintiffs must seek redress against the FPPA, not the City, as the FPPA is an independent state body created by the Colorado General Assembly. *See* Colo.Rev.Stat. § 31–20–1004 (1986).

■ Defendants have met their initial burden of showing the absence of any genuine issue of material fact on Plaintiffs' § 1983 due process claim. Plaintiffs have not come forward with any specific fact showing a genuine issue for trial on that claim. *See Thrifty Rent–A–Car Sys., Inc.,* 24 F.3d at 1194. I therefore grant Defendants' motion insofar as it seeks judgment on the § 1983 due process claim.

### (4) *Equal Protection Claim.*

Defendants argue Plaintiffs cannot produce sufficient evidence to present a question of fact for the jury on their § 1983 claim for equal protection violation. They rely on the Tenth Circuit's holding in *Welsh v. City of Tulsa, Oklahoma* that the requirements for establishing a § 1983 claim " 'are the same as those for establishing the underlying constitutional ... violations, ... and purposeful discrimination is an essential element of an equal protection violation.' " 977 F.2d 1415, 1419–20 (10th Cir.1992) (quoting *Lewis v. City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990)). The *Welsh* court further noted "discriminatory purpose" implies " 'more than intent as volition or intent as awareness of consequences.' " *Id.* at 1420 (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)). "Rather, it implies that a decisionmaker 'selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' " *Id.*

■ Even if it is assumed that the City dismissed Plaintiffs, disabled officers within the Denver Police Department, because they were members of a disabled class, "for the purposes of equal protection analysis the [disabled] do not constitute a suspect class." *Welsh* at 1420.

■ There is no fundamental constitutional right to government employment. *Id.* Thus, the City's policy denied Plaintiffs equal protection "only if it was not rationally related to the City's legitimate goals." *Id.*

Here, Defendants argue the City's decision not to continue Plaintiffs' employment was rationally related to the fact that they could not perform the essential functions of their jobs. They further assert the City policy identifying the ability to make a forcible arrest and fire a weapon as essential functions of the job of police officer is rationally related to the City's goal of providing public safety and protection for its residents.

■ Plaintiffs have, again, not come forward with any specific fact the City's decision to discontinue Plaintiffs' employment was not rationally related to the legitimate municipal interest of public safety. Accordingly, Defendants are entitled to summary judgment

**1304**

on the § 1983 claim for equal protection violation.

### V. *Conclusion.*

Based on the foregoing analysis, I grant Defendants' summary judgment motion insofar as it seeks dismissal of Defendants Webb, Michaud, McCann and the Civil Service Commission; deny Defendants' motion for summary judgment on Plaintiffs' ADA claims; and grant Defendants' motion for summary judgment on Plaintiffs' 42 U.S.C. § 1983 claims. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED insofar as it seeks dismissal of Defendants Webb, Michaud, McCann and the Civil Service Commission;

IT IS FURTHER ORDERED THAT Defendants' Motion for Summary Judgment on Plaintiffs' ADA claims is DENIED;

IT IS FURTHER ORDERED THAT Defendants' Motion for Summary Judgment on Plaintiffs' 42 U.S.C. § 1983 claims is GRANTED.