**Uzoma U. ANINIBA a/k/a Uzo Uchenna Aniniba, Plaintiff,**

**v.**

**CITY OF AURORA, et al., Defendants.**

**No. Civ. 96–WM–1195.**

United States District Court,
D. Colorado.

Feb. 26, 1998.

Patrick A. Egbune, Aurora, CO, for plaintiff.

Julia A. Bannon, Charles H. Richardson, Aurora, CO, Louis B. Bruno, Bruno, Bruno and Colin, P.C., Denver, CO, for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

MILLER, District Judge.

Before me are defendants' motions for summary judgment.[1] After considering the briefs filed by the parties and counsels' argument at a hearing on the motions, I conclude that plaintiff has failed to establish a constitutional violation to support his civil rights claims and that the defendants are entitled to immunity with regard to his state law tort claims. Therefore, I grant the motions for summary judgment and dismiss plaintiff's complaint.

### Factual Background

The catalyst for this action is an incident that occurred during the afternoon of October 31, 1995. A co-ed group of students from Rangeview High School in Aurora, Colorado, was gathered near the school grounds, in an area between the school and some apartment buildings, when two cars pulled into a parking lot at the apartments. A group of young males got out of the cars and confronted the students about being on their "turf." Allegedly, some of the young men began going through the students' pockets, stealing money, cigarettes, and cigarette lighters. Then some of the young aggressors brutally attacked two of the students. One struck a female student in the face and stomach and kicked her after she fell down. Another young man hit a male student in the face, causing a broken jaw that required surgery to repair. As soon as the young men left, the victims reported the incident to school authorities.

Defendant George Schlick, an Aurora police officer who was the School Resource Officer at the school at the time, received notice of the incident immediately following the students' report. Together with school administrators, he had the student victims and witnesses review school yearbooks to attempt to identify the suspects. Over the remainder of that day and part of the next, Officer Schlick interviewed between fifteen and twenty students and witnesses; all gave substantially the same story.

As a result, five black students, including plaintiff, were identified as being participants in the incident. Plaintiff was linked to the scene as the driver of one of the vehicles involved. Officer Schlick interviewed Carl Hazelwood, one of the suspects, in the presence of Hazelwood's father; Hazelwood admitted that he, plaintiff, and two other suspects were at the apartments at the time of the incident.

On November 1, 1995, the dean of students and the principal of the school interviewed plaintiff. Although he denied any involvement in the assault, he admitted in his written statement that he was present during the incident and witnessed a portion of the confrontation.[2]

Based on the interviews, the student identifications, his review of written statements provided by witnesses and suspects, and the school administrators' decision to suspend the suspects, Officer Schlick placed plaintiff and three other suspects in "protective temporary custody," a term of art under the Colorado Children's Code (see infra at pages 5–6). He contacted Officers Christman and Robertson, who handcuffed plaintiff and the other suspects and escorted them to a police car parked at the school. Plaintiff and the others were taken to the police station where each was photographed, fingerprinted, and released.

No criminal charges were brought against plaintiff as a result of the incident.

Plaintiff sued the City of Aurora, the Aurora Police Department, and Officers Schlick, Christman, and Robertson.[3] He alleged ra-

---

1. There are two motions for summary judgment: one filed on behalf of defendants the City of Aurora, the Aurora Police Department, and Aurora Police Officer George Schlick, and the other filed on behalf of defendants Dennis Christman and Kenneth Robertson, also Aurora Police Officers.

2. At his deposition, plaintiff changed his statement, testifying that he did not observe the incident.

3. Plaintiff also asserted claims against Rangeview High School and various school officials; these claims were later dismissed.

   At a hearing in this case, plaintiff's counsel conceded that the claims against the Aurora Police Department and the police officer defendants in their official capacities should be dismissed. I agreed and dismissed those claims. See Martinez v. Winner, 771 F.2d 424 (10th Cir.1985) (police department is not separate, suable entity); Davoll v. Webb, 943 F.Supp. 1289, 1295 (D.Colo. 1996) (an official capacity suit against both the

cial discrimination in violation of 42 U.S.C. §§ 1981 and 1983, conspiracy to violate his civil rights and negligence in failing to prevent that conspiracy in violation of 42 U.S.C. §§ 1985 and 1986, and state law tort claims for false imprisonment, false arrest, assault and battery, intentional infliction of emotional distress, and libel and slander. Finally, he asserted a general claim for equitable relief.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The adverse party must set forth specific facts showing that there is a genuine issue for trial. The court views the record in the light most favorable to the party opposing the motion. *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 (10th Cir. 1996). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiff's pendent claims assert violations of Colorado tort law and are governed thereby.

### Section 1983 Claim

1. *Grounds for Claim*

■ Although plaintiff lists a panoply of rights allegedly violated by defendants' con-

duct, his general complaint under section 1983 is that his arrest was illegal because it was not pursuant to a warrant.[4] Plaintiff's argument is premised on an incorrect statement of law, namely that police officers are authorized to make a warrantless felony arrest only if the offense is committed in their presence. In fact, a warrantless arrest is constitutionally valid if the arresting officer had probable cause to believe that person committed a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985)).

■ More particularly, since plaintiff was seventeen years old at the time, the Colorado Children's Code, C.R.S. §§ 19-1-101, *et seq.*, governs the defendants' conduct concerning his arrest.[5] Section 19-2-502(1) of the Code authorizes a law enforcement officer to take a juvenile into temporary custody without a warrant or other court order "when there are reasonable grounds to believe that he or she has committed a delinquent act." Although the Code expressly provides that the taking of a juvenile into temporary custody is not an "arrest" (§ 19-2-502(5), C.R.S.), the analysis of the propriety of the defendants' actions remains whether probable cause existed for the detention. *People in the Interest of S.J.F.*, 736 P.2d 29, 30–31 (Colo.1987) (ana-

official and the municipality is redundant). In addition, I dismissed plaintiff's § 1981 claim because plaintiff has not alleged discrimination based on national origin in the making and enforcement of contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). *See also Copeland v. Northwestern Memorial Hosp.*, 964 F.Supp. 1225, 1237–38 (N.D.Ill.1997). This order incorporates the dismissal of those claims.

4. It is difficult to determine the nature of all the constitutional violations asserted in plaintiff's complaint. In addition to the claim for illegal arrest, plaintiff appears to allege a *Miranda* violation, violations of his right to counsel under the Fifth and Sixth Amendments, a Fourth Amendment violation for use of excessive force, and a violation of the Eighth Amendment.

However, plaintiff admits that he was not interrogated by the police officers, and no formal judicial proceedings were initiated against him. Accordingly, any claims under *Miranda* or for violation of his right to counsel must be dismissed. *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990) (*Mi-*

*randa* applies to custodial interrogation); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (Sixth Amendment right to counsel does not attach until formal proceedings are initiated).

The sole basis for an excessive force claim is plaintiff's assertion that he was handcuffed and observed that the officers carried firearms. He does not claim that he was physically injured in any way. He cites no authority for his assertion that such actions constitute excessive force.

Finally, because plaintiff was not convicted or imprisoned, he has no grounds for an Eighth Amendment claim.

5. The Children's Code defines a juvenile, or child, as a person under eighteen years of age. C.R.S. § 19-1-103(18).

The Code has been amended since the actions giving rise to this case occurred. The provisions pertinent to this case, although renumbered, have not changed in substance. For the sake of convenience, I use the current section numbers.

lyzing warrantless arrest of juvenile under probable cause standard).

■ Probable cause to arrest exists when a law enforcement officer has knowledge of facts that would support a reasonable belief that an offense has been or is being committed by the person being arrested. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 2252 n. 9, 60 L.Ed.2d 824 (1979).

When Officer Schlick detained plaintiff, there was evidence that plaintiff had participated in the incident. Plaintiff had been identified as a suspect by one of the students who were assaulted; Carl Hazelwood, a frequently identified suspect, stated that plaintiff was the driver of one of the cars involved; and plaintiff admitted in his written statement that he had witnessed the event. Nothing in the record suggests this evidence was so lacking in credibility that Officer Schlick should not have relied on it.

■ Nevertheless, plaintiff contends that his arrest was motivated by his race. The victims and other students who witnessed the brutality identified the assailants as black males. Thus, race was not a motivation; it was a reality of the identification process. Anyone questioned, detained, or arrested for this assault was necessarily black. Plaintiff presents no evidence that authorities were actuated by racial animus or prejudice.

■ Finally, plaintiff complains he should have been allowed to explain his involvement (or lack thereof) in the incident or even have a preliminary hearing before being taken into custody. I think not. Officer Schlick was not required to question plaintiff before detaining him. Indeed, as a practical matter, the Colorado Children's Code precludes such questioning by limiting the admissibility of statements of juveniles made in the absence of a parent, guardian, or legal custodian. § 19-2-511(1).

Perhaps the situation might have been handled differently, but, based upon the facts and circumstances before him, Officer Schlick had probable cause to arrest plaintiff or take him into temporary custody.[6]

Ultimately, the police did determine that some suspects other than plaintiff would be charged in connection with the incident. The fact that plaintiff was not charged confirms that our system of detention on the basis of probable cause does not determine any person's guilt or innocence. As here, further investigation may well lead to a decision not to charge an individual or, if charged, to dismiss those charges. Accordingly, the system worked even though plaintiff was detained. His detention was really a result of his choice of company. Folk wisdom tells us that if you fly with the magpies you may be shot with the magpies. Luckily, in this instance, plaintiff only had a tail-feather clipped and he remains free to soar.

### 2. *Qualified Immunity*

Officers Schlick, Christman, and Robertson assert the defense of qualified immunity for plaintiff's claims stemming from the arrest.

■ Qualified immunity shields a police officer performing discretionary functions when the officer's conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There are two elements in the analysis of a qualified immunity defense: (1) whether the plaintiff has asserted the violation of a constitutional right, and (2) whether that right was clearly established at the time of the defendant's actions. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). *See also Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir.1997). In the civil context of a section 1983 claim, the plaintiff must establish both elements. *Id.* If the defendants' conduct as alleged by plaintiff does not violate the law, the court need not reach the second element. *Id.*, at 1153-54.

■ Because I conclude that Officer Schlick had probable cause to arrest plaintiff, his conduct did not violate plaintiff's Fourth Amendment rights and, without more, he is entitled to qualified immunity from plaintiff's section 1983 claim.

---

**6.** Even in the absence of probable cause, Officer Schlick had a good faith belief that probable cause existed.

■ Officers Christman and Robertson are also entitled to immunity. These officers responded to Officer Schlick's request, took custody of plaintiff, and transported him to the police station without conducting an independent investigation. The Tenth Circuit has consistently held that police officers may rely on a fellow officer's probable cause determination. *Foote v. Spiegel,* 118 F.3d 1416, 1424 (10th Cir.1997); *Albright v. Rodriguez,* 51 F.3d 1531, 1536 (10th Cir.1995); *Renalde v. City and County of Denver,* 807 F.Supp. 668, 674 (D.Colo.1992).

### 3. *The City*

■ A section 1983 claim against the City itself must be based on the existence of an official custom or policy that is responsible for the deprivation of rights asserted by the plaintiff. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Such a policy or custom may be established by evidence of widespread practice. *Davoll v. Webb,* 943 F.Supp. 1289, 1302 (D.Colo.1996). Plaintiff has not produced any evidence of such a custom or policy.[7]

### *Claims Asserted Under 42 U.S.C. §§ 1985 and 1986*

Plaintiff claims that defendants conspired to deprive him of his constitutional rights, in violation of 42 U.S.C. § 1985(3), and/or that defendants knew of and failed to prevent such a conspiracy, in violation of 42 U.S.C. § 1986.

■ The elements of a section 1985 claim are: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994).

■ The law in this Circuit requires that allegations of conspiracy provide sufficient factual basis to support the existence of the elements of agreement and concerted action. *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230–31 (10th Cir.1990). *See also Langley v. Adams County, Colorado,* 987 F.2d 1473, 1481–82 (10th Cir.1993).

■ The relevant portions of plaintiff's amended complaint and his brief in response to the motions for summary judgment fail to provide a factual basis upon which a jury could find that defendants agreed to violate plaintiff's rights and took "concerted action" to do so. Plaintiff merely alleges, in conclusory fashion, that the defendants "acted individually and in concert" to deprive plaintiff of various rights, that "[a]ll Defendants are agents for one another and acted in concert," and that "the police officers acted in concert as to implicate §§ 1985 and 1986." These statements, unsupported by specific factual allegations, affidavits, or other summary judgment evidence indicating conspiratorial agreement, are insufficient to withstand defendants' summary judgment motions.

■ A violation of section 1985, *i.e.,* an actionable conspiracy, is a prerequisite for a claim under section 1986. *Lowden v. William M. Mercer, Inc.,* 903 F.Supp. 212 (D.Mass.1995). Because plaintiff has not demonstrated the existence of a section 1985 conspiracy, his section 1986 claim must also fail.

### *State Law Claims*

■ Defendants contend that they are immune from liability on plaintiff's state law tort claims under the Colorado Governmental Immunity Act, C.R.S. § 24–10–101, *et seq.* (the Act). Sovereign immunity bars tort actions against public entities, such as the City. C.R.S. § 24–10–108. Although the Act waives immunity for certain enumerated causes of action, none of plaintiff's tort claims fall within the waiver. C.R.S. § 24–10–106(1).[8] Therefore, the City is entitled to sovereign immunity.

---

7. I note that, while defendants provided factual detail in their motions, briefs, and the exhibits thereto, plaintiff did not respond with evidence setting forth specific facts demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e).

8. The exceptions enumerated in section 106(1) include operation of a motor vehicle; operation of a public hospital, correctional facility, or jail; a dangerous condition of a public building, a public highway, road, or street, or public hospital or jail; and the operation and maintenance of a public utility facility.

Likewise, public employees are immune from liability for torts which "arise out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton[.]" C.R.S. § 24–10–118(2)(a). The officers, in their individual capacities, are therefore immune, provided that their conduct was not "willful and wanton."

■ Plaintiff's claims in the amended complaint for intentional infliction of emotional distress, libel and slander, and equitable relief (to the extent the latter claim states an action in tort) do not allege willful and wanton conduct.[9] Therefore, plaintiff has not stated a claim which pierces the officers' immunity shield.

■ The second claim (false imprisonment/arrest) and third claim (assault and battery) state that the actions of the defendants were knowing and malicious. Faced with the defendants' motions for summary judgment, plaintiff was required to demonstrate that there is a genuine issue for trial on these claims. Fed.R.Civ.P. 56(e). In his response brief, however, plaintiff provides no evidence, by affidavit or otherwise, to support the allegations in his complaint that defendants acted willfully.[10]

I have concluded that the defendant officers acted reasonably and with probable cause. Plaintiff has not identified any evidence that would establish a genuine issue as to whether their conduct was willful and wanton. In the absence of such evidence, they are entitled to immunity under Colorado law.

*Conclusion*

Those with hindsight may disagree with the decision to place plaintiff in custody when Officer Schlick could easily have waited to question plaintiff in the presence of a parent or guardian. I am concerned here only with whether a violation of law occurred, however, and not whether a better choice could or should have been made. Because no such violation occurred, and because defendants are entitled to immunity with regard to the state tort claims, summary judgment is appropriate for the defendants.

Accordingly, it is ordered:

1. Defendants' motions for summary judgment are granted.

2. Plaintiff's complaint shall be dismissed with prejudice.

2. Defendants may file a bill of costs.

---

9. The fourth claim for emotional distress alleges only that the defendants were "reckless." The fifth and seventh claims, for libel and slander and equitable relief, respectively, do not allege any mental state on the part of defendants.

10. In his response, plaintiff refers to the fact that the "actual suspects had a neutral magistrate review the facts" as evidence that his treatment by the defendants (without such review) was willful. This reference is not entirely clear, but it appears that the Aurora police did take action against several people in connection with the October 31 incident. Plaintiff attaches to his brief several affidavits of probable cause for arrest warrants. These affidavits reflect dates occurring after plaintiff's detention, however. There is no evidence that other suspects were treated differently from plaintiff on November 1, 1995, the only date at issue in this action.